# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff-Appellee,<br><br>v.<br><br>MARIO GONZALEZ-GODINEZ,<br><br>　　　　　　　　Defendant-Appellant. | Case No.: 19-CR-3506-BGS-DMS-1<br><br>**ORDER AFFIRMING JUDGMENT OF CONVICTION** |

On January 27, 2020, Defendant-Appellant Mario Gonzalez-Godinez ("Defendant" or "Gonzalez") filed a timely notice of appeal to the district court. (ECF No. 44.) This Court has jurisdiction over the appeal pursuant to 18 U.S.C. § 3402. For the reasons discussed below, the Court affirms.

## I.
## BACKGROUND

On September 12, 2019, Plaintiff-Appellee United States of America ("United States" or "Government") filed an information charging Defendant Gonzalez with attempted illegal entry in violation of 8 U.S.C. § 1325(a)(1), a misdemeanor. (ECF No. 12.) Gonzalez's case proceeded under the "Streamline" process, which the Department of Justice ("DOJ") uses to manage prosecution of misdemeanor charges brought under

§ 1325. *See United States v. Chavez-Diaz*, No. 18MJ20089 AJB, 2018 WL 9543024, at *1–2 (S.D. Cal. Oct. 30, 2018) (describing DOJ's "Operation Streamline" process, as implemented by the government in this Court), *rev'd on other grounds*, 949 F.3d 1202 (9th Cir. Feb. 5, 2020).

Gonzalez filed several pre-trial challenges, including a motion to dismiss on the grounds that (1) the government failed to allege all the elements of the charged offense; (2) section 1325 violates equal protection and the nondelegation doctrine; and (3) his prosecution specifically violated equal protection. (*See* ECF Nos. 22, 32.) Gonzalez also moved to suppress his in-custody statements as involuntary and taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). (*See* ECF No 22.) The court reserved ruling on the motions until the date of trial. (*See* ECF No. 39.)

A one-day trial was held on January 21, 2020, before Magistrate Judge Bernard G. Skomal. (*Id.*) The government called two witnesses: Border Patrol Agent Chad Hewitt and Border Patrol Agent Marvin Jiron. (Trial Tr., ECF No. 55, at 2.) Agent Hewitt testified that on January 22, 2019, he was stationed near the border between the United States and Mexico in an area called Goat Canyon. (*Id.* at 6–7.) That morning, he came into contact with two individuals, one sliding down an embankment and one hiding in the brush, in an area approximately thirty yards from the border. (*Id.* at 7–8.) Upon investigation, Agent Hewitt questioned the individuals as to their citizenship and whether they had lawfully crossed the border. (*Id.* at 12–13.) Both individuals stated they were citizens of Mexico and did not have documentation or identification that would permit them to be in the United States legally. (*Id.* at 13–14.) Although Agent Hewitt, who testified via video, was unable to identify Gonzalez in court, he stated the last names of the two individuals arrested on January 22, 2019 were "Gonzalez-Godinez." (*Id.* at 12, 20.) Agent Hewitt placed the individuals under arrest and they were transported to the Imperial Beach Border Patrol Station for processing. (*Id.* at 15.)

Next, Agent Jiron testified regarding the post-arrest interview of Gonzalez. Agent Jiron positively identified Gonzalez in court. (*Id.* at 30–31.) Agent Jiron interviewed

Gonzalez at the Imperial Beach Border Patrol Station on January 22, 2019. (*Id.* at 29–30.) Before questioning Gonzalez, Agent Jiron, a native Spanish speaker, advised Gonzalez of his *Miranda* rights, including the right to remain silent and the right to counsel. (*Id.* at 31–33.) Agent Jiron testified that Gonzalez acknowledged verbal understanding of his rights and signed a document stating he understood the rights. (*Id.* at 31–32.) Gonzalez stated he was a citizen of Mexico and knew it was illegal for him to enter the United States. (*Id.* at 33–35.) Prior to questioning, Agent Jiron also read Gonzalez his administrative rights pertaining to immigration proceedings. (*Id.* at 35–36, 42.)

Following testimony, the court denied Gonzalez's motion to suppress his statements, as well as his pre-trial motions to dismiss. (*Id.* at 51, 55.) Gonzalez moved for judgment of acquittal, which the court denied, finding there was sufficient evidence to convict Gonzalez of attempted illegal entry in violation of 8 U.S.C. § 1325(a)(1). (*Id.* at 45, 54, 55–72.) The court found Gonzalez guilty and sentenced him to time served. (*Id.* at 70–73, 77.) This appeal followed.

## II.

## DISCUSSION

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. "A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." Fed. R. Crim. P. 58(g)(2)(B). The appeal's scope is "the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

On appeal, Gonzalez raises six challenges to his conviction. First, Gonzalez argues his in-custody statements should have been suppressed. Second, Gonzalez argues the government failed to prove alienage beyond a reasonable doubt. Third, Gonzalez argues the charging document failed to allege knowledge of alienage. Fourth, Gonzalez argues § 1325(a)(1) is unconstitutional because it violates the nondelegation doctrine. Fifth,

Gonzalez argues his prosecution in the Southern District of California's "Streamline Court" violates the Equal Protection Clause. Sixth, Gonzalez argues § 1325 violates the Equal Protection Clause. The Court addresses each argument in turn.

### A. Suppression of Statements

First, Gonzalez argues his custodial statements during his post-arrest interview with Agent Jiron were involuntary and in violation of *Miranda*, and therefore the magistrate judge erred in declining to suppress them.

The Court need not reach the merits of this argument at this time. As laid out below, even if the Court were to exclude Gonzalez's custodial statements to Agent Jiron, the remaining evidence was sufficient to support Gonzalez's conviction for illegal entry under § 1325. Thus, if any error did occur, it was harmless. *See United States v. Williams*, 435 F.3d 1148, 1151 (9th Cir. 2006) ("The admission of statements made in violation of a person's *Miranda* rights is reviewed for harmless error."); *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (holding involuntary confessions are subject to harmless error).

### B. Proof of Alienage

Second, Gonzalez contends the government failed to prove alienage beyond a reasonable doubt. Section 1325(a)(1) prohibits "[a]ny alien" from "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers." Alienage is a specific element of the offense, which the government must prove beyond a reasonable doubt. *See United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009) (stating alienage is a specific element of illegal reentry statute which uses identical language of "any alien").

Gonzalez argues the evidence was insufficient to convict him because the only proof of his alienage is his own statements, which were not corroborated by independent evidence, as required by *United States v. Lopez-Alvarez*, 970 F.2d 583 (9th Cir. 1992). "When the primary evidence of citizenship offered by the Government consists of the defendant's own admissions, those admissions require 'some independent corroborating

4

evidence in order to serve as the basis for a conviction.' " *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997) (quoting *Lopez-Alvarez*, 970 F.2d at 589).

In *Hernandez*, the Ninth Circuit held that "[b]ecause corroboration of a defendant's admission is a mixed question of law and fact that is primarily factual, we review for clear error." 105 F.3d at 1332. Since then, however, the Ninth Circuit has reviewed *de novo* a denial of a motion for judgment of acquittal based on insufficient corroboration of alienage, requiring the court to "ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Valdez-Novoa*, 780 F.3d 906, 921 (9th Cir. 2015) (internal citation and quotation marks omitted); United States v. *Ruiz-Lopez*, 749 F.3d 1138, 1141 (9th Cir. 2014) (same). Gonzalez cannot prevail under either standard. Even if the Court were to credit Gonzalez's argument that his statements to Agent Jiron should be suppressed, as discussed above, the Court finds the remaining evidence—Gonzalez's admissions to Agent Hewitt, corroborated by Agent Hewitt's observations—sufficient to sustain Gonzalez's conviction.

Here, upon apprehension, Gonzalez admitted to Agent Hewitt he was a citizen of Mexico without lawful permission to enter the United States. (Trial Tr. at 12–14.) These statements pertaining to his unlawful entry were supported by Agent Hewitt's independent observations. Agent Hewitt encountered Gonzalez in a remote area, only thirty yards from the border, and a section of the border fence in that area had been removed. (*Id.* at 8–9.) Agent Hewitt testified he observed two individuals, one of whom was sliding down the embankment and one of whom was hiding in the brush. (*Id.* at 8–9; 25–26.)

Gonzalez argues the Ninth Circuit has never held that "mode of entry" evidence alone is sufficient to prove that a person is not a U.S. citizen for the purposes of illegal entry or reentry prosecutions.[1] However, that is not the issue presented here. Rather, this

---

[1] Gonzalez contends entering at a non-designated place is not direct evidence of alienage, and that U.S. citizens can and do enter the country by climbing over the border fence, citing *United States v. Hernandez-Contreras*, No. 18-mj-22638-RAM-1 (S.D. Cal. Nov. 28,

case concerns whether "mode of entry" evidence is sufficient to corroborate Gonzalez's admission that he had no legal authority to be in the United States. Gonzalez contends other judges in this district have held that similar evidence is not sufficient to corroborate an admission of alienage, but in *United States v. Garcia-Villegas*, 575 F.3d 949, 951 (9th Cir. 2009), the Ninth Circuit found such evidence constituted sufficient corroboration. There, the defendant admitted the elements of illegal entry and "the government supplemented these admissions with the testimony of one witness who saw [defendant] climbing the fences marking the border, and one who apprehended him, with torn clothes and bloody hands, hiding in a bush on the American side." The court thus concluded the defendant's "admissions were corroborated" and "[h]is guilt was proved." *Id.*

*Garcia-Villegas* is analogous here. A reasonable factfinder could infer from the circumstances of Gonzalez's apprehension, as testified to by Agent Hewitt, that Gonzalez had no legal right to enter the United States. *See Garcia-Villegas*, 575 F.3d at 951. This independent evidence is sufficient to corroborate Gonzalez's statements.

Accordingly, the Court affirms the magistrate judge's conclusion that the government proved Gonzalez's alienage beyond a reasonable doubt as required for a conviction under § 1325(a).

**C. Mens Rea**

Third, Gonzalez contends § 1325(a)(1) contains a *mens rea* element of knowledge of alienage, and because the charging document did not contain this element, dismissal was warranted. The Court reviews the denial of a pre-trial indictment challenge *de novo*. *United States v. Qazi*, 975 F.3d 989, 992 (9th Cir. 2020)

"Defendant's . . . knowledge of alienage argument has been consistently rejected by other courts in this district." *United States v. Vazquez-Sanchez*, No. 319MJ23193FAGBTM, 2020 WL 2394969, at *3 (S.D. Cal. May 11, 2020). Indeed, those

---

2018), in which a § 1325 prosecution was dismissed because the defendant was proven to be a U.S. citizen.

courts rejected the precise argument Gonzalez makes here—that the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), requires a finding that knowledge of alienage is an element of § 1325(a)(1). *Vazquez-Sanchez*, 2020 WL 2394969, at *3 (collecting cases).

*Rehaif* reiterates the "longstanding presumption" that "Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" 139 S. Ct. at 2195 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 74 (1994)). There, the Supreme Court held that in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2), which criminalize possession of firearms by certain categories of individuals, the government was required to "show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* at 2491.

Here, however, unlike the statutes at issue in *Rehaif*, "the element of alienage in a § 1325 charge does not criminalize 'otherwise innocent conduct.'" *United States v. Zeferino-De Jesus*, No. 319MJ23139AHGDMS, 2020 WL 94373, at *8 (S.D. Cal. Jan. 7, 2020). The court in *United States v. Ramos-Moran*, No. 19CR2984-LL, 2019 WL 4393670 (S.D. Cal. Sept. 13, 2019), agreed, finding *Rehaif* inapplicable in the illegal entry context on two grounds. First, in contrast to the statutes at issue in *Rehaif*, § 1325 does not contain an express use of "knowingly." *Id.* at *4. Second, pursuant to 19 U.S.C. § 1459, every "individual" must comply with designated border crossing requirements, and a defendant's noncitizen status is "therefore not the 'crucial element' separating wrongful from innocent conduct." *Id.* ("From the plain text, Defendant's conduct would have violated the law even if he was a U.S. citizen."); *see* 19 U.S.C. § 1459 (providing criminal penalties for any individual who intentionally fails to enter at a designated border crossing point, fails to report the arrival, and fails to present for inspection). "Therefore, the Government does not need to prove that a defendant knew he or she was an alien to obtain a conviction for violating 8 U.S.C. § 1325(a)(1)." *Zeferino-De Jesus*, 2020 WL 94373, at *8.

Gonzalez next raises a mistake-of-fact argument, contending the government was required to charge knowledge of alienage because the offense was charged as an attempt crime. Gonzalez argues that if a defendant genuinely believes he is a U.S. citizen, he has not committed attempted illegal entry, relying on *United States v. Quijada*, 588 F.2d 1253, 1255 (9th Cir. 1978). This argument has similarly been rejected by courts in this District. *See Vazquez-Sanchez*, 2020 WL 2394969, at *4. "*Quijada* cannot be plausibly read to hold that a defendant could avoid conviction under § 1325 if [he] had the specific intent to enter the country free from official restraint, merely because the defendant had a mistaken belief that [he] was not an alien at the time of the offense." *Zeferino-De Jesus*, 2020 WL 94373, at *8.

The Court agrees with the reasoning of the other courts which have held that the government is not required to charge knowledge of alienage as an element of attempted illegal entry. Accordingly, Gonzalez's challenge to the information fails.

**D. Nondelegation Challenge to § 1325**

Fourth, Gonzalez argues § 1325(a)(1) is unconstitutional because it lacks an intelligible principle to guide the determination of what constitutes a "designated" place of entry and thus violates the nondelegation doctrine. "Courts in this District have resoundingly rejected the non-delegation arguments presently raised by Defendant in the context of § 1325(a)(1)." *Vazquez-Sanchez*, 2020 WL 2394969, at *3 (collecting cases). Section 1325's "delegation to immigration officers to designate time and place of lawful entry is . . . significantly constrained," as ports of entry can only be designated by the Secretary of Homeland Security subject to the Administrative Procedures Act. *United States v. Morales-Roblero*, No. 3:19-MJ-24442-AHG, 2020 WL 5517594, at *3 (S.D. Cal. Sept. 14, 2020) (citing *United States v. Nunez-Soberanis*, 406 F. Supp. 3d 835, 839–40 (S.D. Cal. 2019); *see* 8 CFR § 100.4(a). Consistent with these cases, the Court finds, as it has previously, that § 1325(a)(1) does not violate the nondelegation doctrine. *See United States v. Singh*, No. 19-CR-3623 BLM (DMS), 2020 WL 5500232, at *13 (S.D. Cal. Sept. 11, 2020).

### E. Equal Protection Challenge to "Streamline Court"

Fifth, Gonzalez contends the prosecution of his case in "Streamline Court" violates the Equal Protection Clause of the Constitution. Gonzalez argues that by prosecuting § 1325 offenses through the Streamline process instead of through the Southern District's Central Violations Bureau ("CVB"), the government treats similarly situated defendants differently on the basis of alienage, in violation of equal protection.

The Equal Protection Clause under the Fourteenth Amendment states in relevant part that the government shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. Courts in this District have concluded § 1325 does not create a classification based on alienage that would invoke strict scrutiny. *See, e.g.*, *United States v. Jeronimo-Pablo*, No. 20mj20066-AHG, 2020 WL 4500628, at *2 (S.D. Cal. Aug. 5, 2020); *United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1154 (S.D. Cal. 2019); *United States v. Silva-Sosa*, No. 18MJ23270-KSC, 2019 WL 1470868, at *2-3 (S.D. Cal. Apr. 3, 2019); *United States v. Mazariegos-Ramirez*, No. 18MJ2276-WQH, 2019 WL 338923, at *2 (S.D. Cal. Jan. 28, 2019); *Chavez-Diaz*, 2018 WL 9543024, at *3.[2]

The Court accordingly applies rational basis review to Gonzalez's arguments. *See United States v. Barajas-Guillen*, 632 F. 2d 749, 752 (9th Cir. 1980) ("[C]lassifications among aliens made pursuant to the immigration laws need only be supported by some rational basis to fulfill equal protection guarantees.") (internal quotation marks and citations omitted); *Plyler v. Doe*, 457 U.S. 202, 223 (1982) ("Undocumented aliens cannot

---

[2] Although Gonzalez contends the Government's decision to bring § 1325 charges creates a distinction based on alienage, the distinction is based on each defendant's alleged criminal activity, not alienage. Rather than creating a separate court for processing alien defendants regardless of what criminal charges are brought against them, the Streamline process is only used for charges brought based on alleged unlawful entry in violation of § 1325. Accordingly, Gonzalez fails to demonstrate that "alienage, as a suspect class, is the basis for any distinct or different treatment" because all misdemeanor § 1325 cases are handled together and "[t]he scheduling of these matters in one courtroom or the other is charge based, not nationality based." *Chavez-Diaz*, 2018 WL 9543024, at *2–3.

be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.' "). Applying a rational basis standard, the question is whether "the classification at issue bears some fair relationship to a legitimate public purpose." *Hoffman v. United States*, 767 F.2d 1431, 1436 (9th Cir. 1985) (quoting *Plyler*, 457 U.S. at 216).

As other courts in this District have noted, Streamline Court serves the legitimate government interest of conserving judicial resources. *See United States v. Reyes-Pinzon*, No. 19-MJ-24308-RNB-H, 2020 WL 2542640, at *3 (S.D. Cal. May 19, 2020) (collecting cases). Indeed, "[m]isdemeanor § 1325 cases are handled together rather than on the CVB calendar because it makes 'organizational sense' given the volume of § 1325 cases and divergent jurisdictional underpinnings of CVB court." *Ramirez-Ortiz*, 370 F. Supp. 3d at 1154 (internal quotation marks and citations omitted). Furthermore, § 1325 cases cannot be placed on the CVB calendar because they are not CVB matters.[3] The Court agrees with *Chavez-Diaz* and *Ramirez-Ortiz*, and finds there is a rational basis for the court to "separately calendar matters that fall into groups by charge and type of proceedings." *Chavez-Diaz*, 2018 WL 9543024, at *3. Gonzalez's challenge therefore fails.

Gonzalez further argues "Streamline Court" is unconstitutional because the government's policy of prosecuting § 1325 defendants via Streamline, rather than in CVB court, violates equal protection under the doctrine of selective prosecution or selective enforcement. This argument fails for the reasons set forth in *Singh*, 2020 WL 5500232, at *16. The Court finds the government's use of the Streamline process does not amount to selective prosecution or selective enforcement. *See, e.g.*, *United States v. Lazcano-Neria*,

---

[3] The CVB docket handles all matters charged by citation, information, indictment, or complaint pursuant to the Assimilative Crimes Act, 19 U.S.C. § 13. *See United States v. Sproed*, 628 F. Supp. 1234 (D. Or. 1984). These matters include "improper parking, illegal camping, speeding, civil disturbances, fish and wildlife infractions, driving while intoxicated and other offenses." *Chavez-Diaz*, 2018 WL 9543024, at *2 (citation omitted). Accordingly, the court in *Chavez-Diaz* concluded "[i]mmigration violations, like 8 U.S.C. § 1325(a), are not subject to disposition as a CVB matter." *Id.* at *4.

No. 3:20-MJ-04538-AHG, 2020 WL 6363685, at *4 (S.D. Cal. Oct. 29, 2020); *United States v. Campos-Atrisco*, No. 3:19-MJ-24683-KSC, 2020 WL 7181086, at *4 (S.D. Cal. Dec. 7, 2020).

Accordingly, the Court rejects Gonzalez's equal protection challenges to his prosecution in Streamline Court.

**F. Equal Protection Challenge to 1325(a)**

Lastly, Gonzalez argues the Court should vacate his conviction because § 1325(a) is facially unconstitutional under the Equal Protection Clause in light of the Supreme Court's decision in *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2018). The Court reviews *de novo* the constitutionality of a statute. *United States v. Dowai*, 839 F.3d 877, 879 (9th Cir. 2016); *United States v. Younger*, 398 F. 3d 1179, 1192 (9th Cir. 2005).

In *Morales-Santana*, the Supreme Court held that the gender-based distinctions for derivative citizenship set forth in 8 U.S.C. §§ 1401(a)(7) and 1409(a) and (c) are unconstitutional in violation of the Equal Protection Clause. 137 S. Ct. at 1700–01. Gonzalez argues because 8 U.S.C. § 1325 incorporates §§ 1401 and 1409's definitions of "alien" and "citizen," it is also unconstitutional.

However, several courts in this district, including this Court, have already addressed and rejected the argument that the holding in *Morales-Santana* renders § 1325(a) facially invalid. In *United States v. Ibarra-Hernandez*, No. 20-mj-20300-RNB-H, 2020 WL 3078514 (S.D. Cal. Jun. 9, 2020), the court found the defendant was unable to meet her burden to demonstrate that "no set of circumstances exists under which the statute would be valid," as is required in a facial challenge to the constitutionality of a law, because "[t]he severability clause in the Immigration and Nationality Act ('INA') dictates that the remainder of 8 U.S.C. §§ 1401 and 1409 were not affected by *Morales-Santana*." 2020 WL 3078514, at *5 (quoting *United States v. Duffy*, 752 F. App'x 532, 533 (9th Cir. 2019) (unpublished) (citing 8 U.S.C. § 1101 note ("If any provision of this title . . . is held invalid, the remainder of the title . . . shall not be affected thereby."))). In other words, because of

the INA's severability clause, *Morales-Santana*'s holding did not affect the definitions of "alien" and "citizen" incorporated in § 1325(a). *Id.*

Similarly, the Ninth Circuit has rejected the argument that *Morales-Santana* invalidates 8 U.S.C. § 1326, the illegal reentry statute, citing the INA's severability clause. *See United States v. Mayea-Pulido*, 946 F. 3d 1055, 1066 n.10 (9th Cir. 2020). Accordingly, the Court agrees with *Ibarra-Hernandez*, and finds Gonzalez has failed to establish that § 1325 is facially unconstitutional. *See Ibarra-Hernandez*, 2020 WL 3078514, at *5; *United States v. Benito-Mendoza*, No. 19-MJ-23597-RNB-CAB, 2020 WL 206183, at *2 (S.D. Cal. Jan. 13, 2020).

## III.
## CONCLUSION AND ORDER

For these reasons, the Court AFFIRMS Gonzalez's judgment of conviction.

**IT IS SO ORDERED.**

Dated:  February 12, 2021

_____
Hon. Dana M. Sabraw, Chief Judge
United States District Court